402 So.2d 344 (1981)
James Raymond CHAMBERS
v.
STATE of Mississippi.
No. 52725.
Supreme Court of Mississippi.
August 12, 1981.
Rowland H. Geddie, Jr., David O. Butts, Tupelo, for appellant.
Bill Allain, Atty. Gen. by Marvin L. White, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
*345 Before ROBERTSON, WALKER and LEE, JJ.
WALKER, Justice:
Appellant was convicted in the Circuit Court of Lee County, Mississippi, on charges of armed robbery and aggravated assault and sentenced to serve twenty (20) years and ten (10) years consecutively.
On appeal to this Court appellant contends, inter alia: It was error to overrule his motion to suppress the identification testimony of the victim, Bernice Tapp, for the reason that Tapp's pretrial identification of appellant was unreliable, being the result of an impermissibly suggestive pretrial confrontation; and the verdict was against the overwhelming weight of the evidence. We affirm.
On December 17, 1979, Bernice Tapp was beaten with a shotgun and robbed while working at his place of business, the Hilltop Package Store. He was immediately taken to the hospital where some fifty to seventy-five stitches were required to suture his head. One and a half to two hours after the robbery, the Chief of Police and Deputy sheriff, both caucasians, escorted appellant, a black man, into Tapp's hospital room where he immediately identified appellant as being his assailant.
On the day of the robbery, the Prentiss County Sheriff's Department, which had received a description of the car appellant was driving and his name, arrested him in their county. He was then picked up by the Lee County Sheriff's Department, taken to Lee County jail for processing, and immediately thereafter to the hospital where Tapp was a patient. The testimony is conflicting as to what Chief Conlee said to Tapp when he escorted Chambers into Tapp's room. Chief Conlee had seen Tapp at the scene of the robbery and from his observations believed Tapp was in a physically critical state. At the hospital, Conlee first inquired of Tapp as to his physical state, and being told Tapp was feeling fair and finding Tapp to be coherent and alert, Conlee asked him if he knew appellant. Tapp, put on his glasses and immediately stated, "That's the man that robbed me."
Tapp testified that appellant had worn a green Army jacket at the time of the robbery and was wearing a brown coat during the identification confrontation. When appellant was arrested he was wearing the same brown coat. Testimony showed that $650.00 was taken from Tapp's cash register and $647.00 was found on Chambers in the pocket of the brown coat. Appellant contends that he had been driving in an acquaintance's car and when he became chilled, he observed the brown coat lying on the backseat and put it on for warmth and that he knew nothing about the money.
The issue as to whether or not a pretrial "one man showup" violates a suspect's right to due process has been presented before the courts of this nation on many occasions.
In Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), the United States Supreme Court subjected identification confrontations, as in the present case, to the requirement of due process. The Court recognized that eyewitness testimony obtained from a pretrial identification which is "so unnecessarily suggestive and conducive to irreparable misidentification" violates a defendant's right to due process of law. This violation stems from the view that a one man showup on its face conveys the suggestion that the person presented is believed to be guilty by the police. The Stovall Court said:
... the confrontation conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law... . However, a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it... . (388 U.S. at 301-02, 87 S.Ct. at 1972, 18 L.Ed.2d at 1206).
In its findings in Stovall, the Court found the "showup" in the victim's hospital room to be suggestive, but because there was a serious question as to whether or not the victim would live, there was no violation of due process.
*346 The Court in Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), which involved photographic identification rather than a one-man showup as in Stovall applied the due process test under Stovall, supra, but phrased the test in a somewhat different context as follows:
The danger that use of the technique [use of photographs] may result in convictions based on misidentification may be substantially lessened by a course of cross-examination at trial which exposes to the jury the method's potential for error. We are unwilling to prohibit its employment, either in the exercise of our supervisory power or, still less, as a matter of constitutional requirement. Instead, we hold that each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. This standard accords with our resolution of a similar issue in Stovall v. Denno, 388 U.S. 293, 301-302, 87 S.Ct. 1967 [1972], 18 L.Ed.2d 1199, 1206, and with decisions of other courts on the question of identification by photograph. (390 U.S. at 384, 88 S.Ct. at 971, 19 L.Ed.2d at 1253).
In Stovall, supra, and Simmons, supra, the Supreme Court has established a two-pronged test of a violation of due process as follows:
The first question is whether the initial identification procedure was "unnecessarily" [Stovall] or "impermissibly" [Simmons] suggestive. If it is found to have been so, the court must then proceed to the question whether the procedure found to have been "unnecessarily" or "impermissibly" suggestive was so "conducive to irreparable mistaken identification" [Stovall] or had such a tendency "to give rise to a very substantial likelihood of irreparable misidentification" [Simmons] that allowing the witness to make an in-court identification would be a denial of due process. (United States ex rel. Phipps v. Follette, 428 F.2d 912, 914-915 (2d Cir.1970)).
In the later case of Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the Supreme Court did not adhere to the strictness of the due process test as found in Stovall, supra, and Simmons, supra. The Court softened the application of the test by adding the concept of the "reliability of" the pretrial identification. The Court stated:
We turn, then, to the central question, whether under the "totality of the circumstances" the identification was reliable even though the confrontation was suggestive.
The Court also specifically set out the factors to be considered in evaluating the likelihood of misidentification as: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.
In applying the criteria of Neil v. Biggers, supra, to the present case, we find that:
(1) Tapp saw the appellant for a three to five minute period immediately prior to the robbery and assault, and then ten minutes later had an opportunity to view him again for one minute which was ample time to establish recognition of appellant.
(2) Tapp's attention was directed to the appellant on his first trip to the store as they entered into conversation and the second time when appellant approached Tapp armed with a rifle.
(3) The testimony does not indicate a description was given by Tapp immediately after the robbery, however, it is not uncommon for a description not to be given by a victim who is seriously injured and carried to a hospital and does not speak with the police until sometime later  in this case the police brought Chambers, the appellant, to the hospital one and one-half hours later.
*347 (4) Tapp immediately, emphatically and positively, identified appellant as "that's the man that robbed me."
(5) The confrontation took place one and one-half to two hours after the robbery when Tapp's memory about appellant was still fresh in his mind.
As was stated in Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), we cannot say that under all the circumstances of this case there was "a very substantial likelihood of irreparable misidentification." Short of that point, such evidence is for the jury to weigh. We are content to rely upon the good sense and judgment of juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.
We find no error in the trial of this case which would deny defendant his right to due process of law.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, BROOM, LEE, BOWLING and HAWKINS, JJ., concur.