*1076
 
 GRIFFIS, J.,
 

 for the Court.
 

 ¶ 1. Billy Joe Anderson was convicted of armed robbery and sentenced to serve thirty-five years in the custody of the Mississippi Department of Corrections. Anderson now appeals and argues that the circuit court abused its discretion when it: (1) failed to suppress the in-court identification of Anderson when the initial out-of-court identification had been tainted by an earlier display of a single photograph of Anderson and (2) admitted into evidence exhibit number four — the photographic lineup — when its authenticity could not be conclusively established. We find no error and affirm.
 

 FACTS
 

 ¶ 2. Anderson was indicted for the September 10, 2002, armed robbery of Jerry’s Appliance Center in Utica, Mississippi. At the time of the robbery, there were only two employees working at Jerry’s — Bryan Hales and Lynda Stephens. They heard the door open and saw two males enter the store. One man was tall and thin; the other was short and muscular. Both Hales and Stephens assumed that the men were customers because they began to look around the store. Then, the tall, thin man pulled out a gun and pointed it at Hales. He demanded that Hales give him the money from the cash register.
 

 ¶ 3. While the tall man was holding the gun on Hales, the shorter man removed about $1,000 in cash and checks from the cash register. The tall man then demanded Hales’s wallet. Hales and Stephens were told to get on the floor behind the store counter until the two men left the store.
 

 ¶ 4. Hales then called, the Utica Police Department. Officer Von Shinnie immediately reported to the crime scene. Utica Police Chief Timothy Myles, who was in Jackson at the time, was also called to the scene.
 

 ¶ 5. Officer Shinnie spoke with Darren Howard, the owner of a car wash located across the street from Jerry’s. Howard told Shinnie that he saw his cousin, Billy Joe Anderson, in a blue car driving up and down Main Street and back behind Jerry’s.
 

 ¶ 6. Jerry Yates, the owner of Jerry’s, was called to the store after the robbery. He called his long-time customer, Hattie Mae Washington, to find out if she knew Anderson. She informed Yates that Anderson was her son. Yates said that Anderson had robbed him and asked Washington to come to the store. Washington was -asked for a picture of her son, and she retrieved a Polaroid picture of Anderson that she kept in her car. The picture had been taken while Anderson was eating a piece of cake, so part of his face was covered.
 

 ¶ 7. Hales testified that he did not remember seeing the photograph. Stephens remembered the photograph, but she said that she could not tell whether or not the man eating cake in the picture was the individual who had robbed the store. Washington testified that both Hales and Stephens assured her that the man in her picture was not the man who had robbed the store.
 

 ¶8. Approximately one week after the robbery, Officer Shinnie separately showed Hales and Stephens a photographic lineup containing photographs of six different males. Hales and Stephens both independently selected Anderson as the tall, thin man who held the gun during the robbery.
 

 ¶ 9. Anderson filed a motion to suppress the photographic lineup and any in-court identification. After a lengthy hearing, the circuit court denied Anderson’s motion and found that the show-up — the showing of the single Polaroid picture of Anderson
 
 *1077
 
 eating cake — did not taint the identification from the photographic lineup because Anderson was not identified from the Polaroid. The circuit court further held that there was nothing unduly suggestive about the photographic lineup; thus, it was unnecessary to consider the factors regarding any issues with an in-court identification. The witnesses were allowed to identify Anderson during trial, and the jury found Anderson guilty of armed robbery. Anderson now appeals his conviction.
 

 ANALYSIS
 

 I. Whether the witnesses’ in-court identification of Anderson was tainted by the earlier display of the picture of Anderson eating cake or the photographic lineup.
 

 ¶ 10. Anderson argues that “the original out-of-court identification upon which his arrest was based was tainted by a view on the day of the robbery of a single photograph his mother brought to Jerry’s.” He further claims that the photographic lineup was unduly suggestive, and it tainted the in-court identification of him. The State responds that there was substantial evidence to support the circuit court’s ruling that the photographic lineup was not suggestive and that the picture shown by Anderson’s mother did not taint the witnesses’ later identification of Anderson.
 

 ¶ 11. When reviewing a trial court’s suppression hearing findings, we consider “whether or not substantial credible evidence supports the trial court’s findings that, considering the totality of the circumstances, in-court identification testimony was not impermissibly tainted,” and we will disturb the findings of the trial court “only where there is an absence of substantial credible evidence supporting it.”
 
 Brooks v. State,
 
 748 So.2d 736, 741(¶ 26) (Miss.1999) (citation omitted).
 

 ¶ 12. This case is governed by
 
 York v. State,
 
 413 So.2d 1372, 1383 (Miss.1982). In
 
 York,
 
 the Mississippi Supreme Court held that:
 

 Only pretrial identifications which are suggestive, without necessity for conducting them in such manner, are proscribed. A lineup or series of photographs in which the accused, when compared with the others, is conspicuously singled out in some manner from the others, either from appearance or statements by an officer, is impermissibly suggestive.
 
 Foster v. California,
 
 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402 (1969);
 
 Simmons v. United States,
 
 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). A showup in which the accused is brought by an officer to the eyewitness is likewise impermissibly suggestive where there is no necessity for doing so.
 
 Manson v. Brathwaite,
 
 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) (impermissively suggestive);
 
 Neil v. Biggers,
 
 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) (same);
 
 Stovall v. Denno,
 
 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) (not impermissively suggestive).
 

 An impermissibly suggestive pretrial identification does not preclude in-court identification by an eyewitness who viewed the suspect at the procedure, unless: (1) from the totality of the circumstances surrounding it (2) the identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.
 

 Id.
 
 (footnotes omitted).
 

 ¶ 13. First, we examine whether the Polaroid picture of Anderson tainted the witnesses’ later identification of Anderson in the photographic lineup. Washington,
 
 *1078
 
 Anderson’s mother, showed Hales and Stephens a picture of Anderson eating a large piece of cake. Neither witness identified the man in the picture as the man who had robbed Jerry’s. The picture was small, and portions of Anderson’s face were covered by the piece of cake.
 

 ¶ 14. The circuit court noted that show-ups — showing a single photograph of a suspect — are certainly suggestive in nature. However, the circuit coui*t found that the testimony of Hales, Stephens, and Washington indicated that no identification was made. The circuit court held that:
 

 We would be dealing with a different situation if in showing the photograph or in observing the photograph that Ms. Washington presented in saying, yes, that was one of the culprits, and then the police got together and came up with a photo lineup which included the same photograph or a photograph of the same defendant that had been earlier identified by the witness, then we would be looking at the
 
 York
 
 factors.
 

 But accepting Ms. Washington’s testimony as fact, both witnesses according to her indicated that the person shown in that photograph was not involved in the robbery.
 

 Therefore, there could not have been any resulting taint from that which led them to make an identification of the defendant from the subsequent photographic lineup.
 

 ¶ 15. We do not agree with the circuit court that the photographic lineup was not tainted by the single photograph simply because Anderson was not positively identified by the witnesses. Anderson’s argument is that the witnesses recognized him from the Polaroid picture and not the robbery. This argument is not conclusively dismissed just because the witnesses said that the man in the Polaroid was not the man who had robbed the store. Thus, we reject the circuit court’s finding that the show-up was not suggestive only because no positive identification was made.
 

 ¶ 16. Anderson argues that the show-up was suggestive; therefore, the subsequent photographic lineup was tainted. He states that “a week [after the robbery and the show-up], Stephens and Hales both identified] Mr. Anderson, the only individual of whom they [had] previously seen a photograph.... ”
 

 ¶ 17. However, even if we agree with Anderson’s argument, the suggestiveness of the Polaroid picture and the photographic lineup does not require the exclusion of the witnesses’ in-court identification of Anderson. As we stated above: “An impermissibly suggestive pretrial identification does not preclude in-court identification by an eyewitness who viewed the suspect at the procedure, unless: (1) from the totality of the circumstances surrounding it (2) the identification was so imper-missibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.”
 
 York,
 
 413 So.2d at 1383 (footnotes omitted).
 

 ¶ 18. The factors to be considered in determining the likelihood of misidenti-fication are:
 

 [1] the opportunity of the witness to view the criminal at the time of the crime, [2] the witnesses] degree of attention, [3] the accuracy of the witnesses] prior description of the criminal, [4] the level of certainty demonstrated by the witness at the confrontation, [5] and the length of time between the crime and the confrontation.
 

 Id.
 
 (quoting
 
 Neil,
 
 409 U.S. at 199-200, 93 S.Ct. 375).
 

 ¶ 19. Here, an examination of these factors shows that, under a totality of the circumstances, there is credible evidence
 
 *1079
 
 to support the circuit court’s admission of the in-court identifications.
 

 A. The opportunity of the witnesses to view the criminal at the time of the crime.
 

 ¶ 20. Both Hales and Stephens had the opportunity to view the gunman’s face under the lighting of the store at noon on the day of the robbery. He was not wearing any type of mask or disguise. Further, Hales and Stephens were only a few feet away from the gunman, and there were no obstructions in the store blocking their view of him.
 

 B. The witnesses’ degree of attention.
 

 ¶ 21. Both witnesses were paying close attention to the gunman because he was pointing an automatic weapon at Hales. Even before seeing the gun, the witnesses paid close attention to the two men because it was part of their job to be attentive to customers who came in to look around the store. Hales testified that he approached the tall man to see if he needed any assistance. He further testified to the areas of the store that the two men browsed before the gun was shown.
 

 C. The accuracy of the witnesses’ prior description of the criminal.
 

 ¶ 22. Both witnesses described the gunman as a tall and skinny male. Hales estimated him to be about six feet tall and about 155 to 160 pounds. According to the record, Anderson is five feet, ten inches tall and weighs 157 pounds.
 

 D. The level of certainty demonstrated by the witnesses at the confrontation.
 

 ¶ 23. Officer Shinnie testified that Hales and Stephens immediately picked Anderson out of the photographic lineup. There was no hesitation from either witness. Hales testified that it only took a matter of seconds to pick out Anderson because he recognized him immediately as the tall man who had robbed the store. Stephens further testified that she was one hundred percent certain that the man that she picked out of the photographic lineup was the same man who had robbed the store.
 

 E.The length of time between the crime and, the confrontation.
 

 ¶ 24. Officer Shinnie presented the photographic lineup to Hales and Stephens one week following the robbery.
 

 ¶ 25. The linchpin of the issue of identification is reliability.
 
 York,
 
 413 So.2d at 1383 (citation omitted). We find that each of the factors examined above is sufficiently met such that, even assuming that the photographic lineup was suggestive, the record is clear as to the reliability of the in-court identifications. Thus, we find that the circuit court did not err in admitting the in-court identifications. Accordingly, this issue is without merit.
 

 II. Whether the authenticity of the photographic lineup was conclusively established.
 

 ¶ 26. Anderson contends that the circuit court abused its discretion in admitting into evidence the copy of the photographic lineup because the exhibit was never properly authenticated. The State responds that the circuit court properly found that the exhibit was what it purported to be — a collection of the photographs shown to the witnesses.
 

 ¶ 27. Authentication of evidence is governed by Mississippi Rule of Evidence 901(a), which states: “The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its
 
 *1080
 
 proponent claims.” We review a circuit judge’s decision to admit or exclude evidence under an abuse of discretion standard.
 
 Graves v. State,
 
 492 So.2d 562, 565 (Miss.1986).
 

 ¶ 28. The Utica Police Department was unable to locate the original photographic lineup that Hales and Stephens actually viewed. Instead, a photocopy of the photographic lineup was introduced as exhibit four. There was conflicting testimony regarding the format of the original photographic lineup. Neither Hales nor Stephens could say that exhibit four was in the exact form as the photographic lineup they used to identify Anderson.
 

 ¶ 29. After Anderson’s objection concerning authentication, the circuit court made the following ruling:
 

 ... it’s the Court [which] determine[s] whether or not it’s admissible, and in exercising that discretion the ultimate inquiry is [whether] the Court [is] satisfied that the document is what it is purported to be, and what it is purported to be is a collection of the photographs shown to the witnesses. The Court is satisfied that it’s a collection of the photographs shown to the witnesses. Whether or not those photographs were shown separately or all together in a sheet as far as the Court is concerned is immaterial. The Court is satisfied that it contains copies of [the] photographs in black and white that were shown to the witnesses.
 

 ¶ 30. We find no abuse of discretion in the circuit court’s ruling. Regardless of the conflicting testimony concerning the form of the original photographic lineup, the testimony at trial and during the suppression hearing established that exhibit four did, indeed, contain copies of the photographs shown to Hales and Stephens. Accordingly, this issue has no merit.
 

 ¶ 31. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF ARMED ROBBERY AND SENTENCE OF THIRTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. MAXWELL, J„ NOT PARTICIPATING.