726 So.2d 233 (1998)
Farikas THOMPSON a/k/a Farikas Tranki Thompson, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-01641 COA.
Court of Appeals of Mississippi.
December 30, 1998.
Treasure R. Tyson, Attorney for Appellant.
Office of the Attorney General by Deirdre McCrory, Attorney for Appellant.
*234 BEFORE McMILLIN, P.J., HERRING, AND KING, JJ.
HERRING, J., for the Court:
¶ 1. Farikas Thompson was convicted by a jury in the Circuit Court of Lauderdale County, Mississippi, of attempted armed carjacking and was sentenced as an habitual offender to serve a term of thirty years in the custody of the Mississippi Department of Corrections. Thompson challenges his conviction on the basis that the trial court erred in: (1) denying a motion to suppress a pre-trial identification; (2) failing to properly instruct the jury on the crime of attempted armed carjacking; and (3) refusing to grant his motions for a judgment notwithstanding the verdict and new trial. We find that the jury received a deficient instruction on the offense of attempted armed carjacking, and therefore, we reverse and remand for a new trial.

A. THE FACTS
¶ 2. On July 22, 1996, Sherry Steele departed from her place of employment and drove to the local FoodMax grocery store in Meridian, Mississippi, to purchase a meal from the store's delicatessen. Steele bought a plate lunch, along with several other small items, from the store and returned to her automobile. After Steele entered the vehicle, she placed the grocery items on the floorboard and started the automobile. As she proceeded to close the driver's side door, she was confronted with an individual standing in the doorway of her vehicle. According to Steele, the individual "crouched down low" and prevented her from closing the door. He then pressed a small caliber weapon into her rib cage and ordered her to "shut up and get out." Although Steele attempted to move away, the individual pressed the weapon further into her side. Obviously terrified, she started to scream, and the individual looked over both of his shoulders, apparently to determine whether anyone had noticed what he was doing. At that point, Steele reached for the door and "slammed it."
¶ 3. Steele then in her vehicle fled from her parking space, circled the parking lot, and called for assistance on her cellular telephone. She vividly described the attacker to the 911 operator as a young, clean shaven black male, dressed in long, baggy denim shorts with a large patch on the rear seat pocket, and also dressed in a white t-shirt and denim vest. Steele also noticed a tattoo on her assailant's arm and some other markings on his hand. Furthermore, she also informed the telephone operator that her assailant was slowly walking toward the entrance of the grocery store.
¶ 4. Shortly thereafter, law enforcement authorities from the Meridian Police Department arrived on the scene and questioned Steele. Detective Ryan Castle obtained a description of the suspect from her, and several officers searched the inside of the grocery store. The search of the store failed to uncover the suspect, and therefore, the officers expanded the area of their search. Within thirty minutes after receiving the initial telephone call from Steele, the officers located an individual who matched the description of the suspect in a nearby Hardee's restaurant. They also discovered a small caliber weapon in the restaurant booth where the assailant was sitting at the time the officers located him.
¶ 5. The officers transported the suspect to a gas station and parked behind Steele's automobile. The officers directed the suspect to stand behind her vehicle so that Steele could observe the suspect through her rearview mirror. When asked if the suspect was the individual who accosted her a short while earlier, Steele responded, "That's him." The officers then transported the suspect to the police station, and the suspect informed them that his name was Larry Tyrone Wislon. However, after a computer check failed to reveal an individual by that name, Detective Castle obtained the suspect's fingerprints and faxed them to the Federal Bureau of Investigation. He was subsequently identified as Farikas Traeche Thompson. Several fingerprints discovered on Steele's automobile matched Thompson's fingerprints.
¶ 6. Following a trial in the Circuit Court of Lauderdale County, Mississippi, Thompson was convicted of attempted armed carjacking. The trial court judge sentenced Thompson as an habitual offender to a term *235 of thirty years in the custody of the Mississippi Department of Corrections.

B. THE ISSUES
¶ 7. Thompson raises the following assignments of error on appeal which are taken verbatim from his brief:
I. WHETHER OR NOT THOMPSON WAS ENTITLED TO A LINE-UP WITH AN ATTORNEY PRESENT AS OPPOSED TO THE SHOW UP TO WHICH HE WAS SUBJECTED WITHOUT THE PRESENCE OF AN ATTORNEY AND WHETHER THE DENIAL OF THOMPSON'S MOTION TO SUPPRESS IDENTIFICATION TESTIMONY IS IN VIOLATION OF THE PROTECTIONS AFFORDED HIM UNDER THE UNITED STATES AND MISSISSIPPI CONSTITUTIONS.
II. WHETHER OR NOT A DEFENDANT CHARGED WITH THE ATTEMPT OF A CRIME IS ENTITLED TO A JURY INSTRUCTION WHICH FOLLOWS THE ATTEMPT STATUTE.
III. WHETHER OR NOT THE VERDICT OF GUILTY WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WHETHER OR NOT THE TRIAL COURT ERRED IN DENYING DEFENDANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT.

C. ANALYSIS

I. DID THE TRIAL COURT ERR IN FAILING TO GRANT THOMPSON'S MOTION TO SUPPRESS IDENTIFICATION TESTIMONY?
¶ 8. Thompson asserts that the trial court erred in failing to suppress the pre-trial identification by Sherry Steele as well as the in-court identification of him by the various witnesses. He alleges that the pre-trial identification at the local gas station was so impermissibly suggestive and conducive to a substantial likelihood of misidentification by Steele that it violated his right to a fair trial. Because there was allegedly no necessity for Steele to identify the suspect while in transit to the police station, Thompson argues that the procedure was unfairly suggestive. As a result, Thompson claims that the trial court should have excluded the pre-trial and in-court identifications. Additionally, Thompson contends that the show-up[1] violated his Sixth Amendment right to counsel.
¶ 9. The admission or exclusion of evidence is largely within the discretion of the trial court. Hentz v. State, 542 So.2d 914, 917 (Miss.1989). In determining whether to suppress evidence of a pre-trial identification, the trial court must resolve whether the identification procedure employed by law enforcement authorities was unnecessarily suggestive. York v. State, 413 So.2d 1372, 1383 (Miss.1982). Nonetheless, a trial court's finding that the pre-trial identification procedure was impermissibly suggestive does not preclude the introduction of the identification evidence. Wash v. State, 521 So.2d 890, 895 (Miss.1988). Rather, the trial court must then consider whether the in-court identification would result in a substantial likelihood of irreparable misidentification under the circumstances. Id. Furthermore, "[e]ven if testimony is proffered of the out-of-court identification itself, the same standard exists ... with the omission of the word `irreparable.'" York, 413 So.2d at 1383.
¶ 10. The key factor in determining the admissibility of an identification is reliability. York v. State, 413 So.2d 1372, 1383 (Miss.1982). In evaluating the likelihood of misidentification, the following factors must be considered:
(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation.
Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) (numbers added).
*236 ¶ 11. Turning to the facts of this case, Steele identified Thompson during a show-up at a local gas station shortly after the commission of the crime. The Mississippi Supreme Court has held that "[a] show-up in which the accused is brought by an officer to the eyewitness is ... impermissibly suggestive where there is no necessity for doing so." York, 413 So.2d at 1383 (citing Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)). Although Detective Ryan Castle testified that he conducted the show-up to confirm that the individual he detained was the perpetrator and to determine whether to continue the police search, the necessity for such an immediate identification procedure is questionable. The trial court judge did not resolve whether the pre-trial identification was a necessity but rather methodically examined the show-up under the five factors set forth above. Because we find that the identification procedure was impermissibly suggestive in the absence of exigent circumstances, we must now determine whether there was a substantial likelihood of misidentification under a totality of the circumstances. See Wash v. State, 521 So.2d 890, 895 (Miss.1988).
¶ 12. The first factor, the opportunity to observe, weighs in favor of the State. Steele had ample opportunity to view the defendant. She testified that Thompson "was crouched" a matter of inches from her during the commission of the crime. The incident occurred in the middle of a grocery store parking lot during the noon hour. According to Steele, she observed the defendant for a few minutes during the attempted carjacking, and then she continued to view the individual as he walked toward the store.
¶ 13. The second factor, attentiveness of the witness, is also evident from the record. Steele stated that she was completely focused on the defendant and his appearance during the commission of the crime. Again, Steele testified that the assailant prevented her from closing her door and he was "in her face."
¶ 14. The third factor, the accuracy of the witness's prior description of the defendant, also weighs in favor of the State. Steele described in detail the clothing and the physical appearance of her attacker. Specifically, she stated that the individual was a young, clean shaven black male, dressed in long, baggy denim shorts with a large patch on the rear seat pocket, and in a white t-shirt and denim vest. She also noted that the attacker had a tattoo on his arm and other markings on his hand. It is further noteworthy that Steele accurately described the weapon used in the incident as a "small black gun." The clothing and physical description given by Steele matched with Thompson's clothing and appearance at the time police located him.
¶ 15. In regard to the fourth factor, Steele positively identified Thompson during the show-up as the individual who accosted her in the parking lot. She did not waver in her identification of the Thompson as her assailant. Steele informed the officers that she was absolutely positive that Thompson was the attacker.
¶ 16. The remaining factor is the length of time between the opportunity to observe and the identification. In this case, the show-up occurred within fifteen to thirty minutes of the incident in question. Consequently, we find that there was credible evidence to support the trial court's admissibility of the identifications under a totality of the circumstances. There was no substantial likelihood of misidentification in permitting the testimony of the out-of-court identification of Thompson by Steele, nor was there a substantial likelihood of irreparable misidentification in allowing the in-court identification. Thus, we conclude that the trial court did not abuse its discretion in admitting the identification evidence.
¶ 17. Thompson also suggests throughout his argument that the show-up violated his Sixth Amendment right to counsel. "The right to counsel under the United States Constitution attaches at the commencement of formal criminal proceedings of an adversarial nature." Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Under the United States Supreme Court's interpretation, formal adversarial proceedings may be initiated by "way of a formal charge, preliminary hearing, indictment, information, or arraignment." Id. at *237 689, 92 S.Ct. 1877. However, the Mississippi Supreme Court has held that the "adversarial process begins when the law enforcement arm of the state takes the defendant into custody, and charges him with a crime." Nixon v. State, 533 So.2d 1078, 1087 (Miss. 1987).
¶ 18. Consistent with the facts in Nixon, a review of the record before us reveals that Thompson was merely a suspect when the officers presented him to Steele for positive identification. There is no evidence that formal adversarial proceedings had commenced against Thompson prior to Steele's identification of him during the show-up. Consequently, we find that Thompson's Sixth Amendment right to counsel had not attached at the time of the show-up.

II. DID THE TRIAL COURT ERR IN DENYING JURY INSTRUCTIONS D-1 AND D-2 WHICH PROVIDED THE NECESSARY ELEMENTS TO PROVE THE CRIME OF ATTEMPTED ARMED CARJACKING?
¶ 19. Thompson alleges that the trial court failed to instruct the jury on the necessary elements of the offense of attempted armed carjacking. Jury Instruction C-8, the only instruction given on attempted armed carjacking, provided as follows:
The Court instructs the Jury that should you find from the evidence in this case, beyond a reasonable doubt that:
1. On or about the 22nd day of July, 1996, in Lauderdale County, Mississippi;
2. The Defendant, Farikas Thompson, did wilfully, unlawfully, and feloniously by use of a deadly weapon readily available and capable of inflicting death or serious bodily harm, a .22 caliber pistol;
3. Attempt to take a motor vehicle from the immediate actual possession of Sherry Steele;
then it is your sworn duty to find the Defendant guilty of Attempted Armed Car Jacking.
Should the State fail to prove any one or more of these elements beyond a reasonable doubt, then you shall find the Defendant not guilty of Attempted Armed Car Jacking.
¶ 20. Although Thompson timely submitted and requested the trial court to grant two jury instructions which explained the elements of attempt, the trial court refused Thompson's instructions. The first instruction requested by Thompson informed the jury that "[i]n order to prove an attempt to car jack, the State must prove that the intended act was prevented from taking place by resistance or other means." Jury Instruction D-2, which the court also refused, provided as follows: "In order to prove an attempt to car jack, the State must prove that there was a design and endeavor to car jack, an overt act towards the commission of car jacking, and failure to complete the car jacking or prevention of completion."
¶ 21. The Mississippi Supreme Court has held that the crime of attempt consists of three elements: "1) an intent to commit a particular crime; 2) a direct ineffectual act done toward its commission; and 3) failure to consummate its commission." Henderson v. State, 660 So.2d 220, 222 (Miss. 1995). See also Miss.Code Ann. § 97-1-7 (Rev.1994). Moreover, the supreme court has concluded that a jury instruction for attempted capital rape which did not mention "failure or prevention of completion" of the act did not adequately set forth all of the necessary elements of the crime. Henderson v. State, 660 So.2d 220, 222-23 (Miss.1995).
¶ 22. In the case sub judice, Thompson correctly notes that the instruction submitted by the trial court to the jury fails to mention the necessary element that he either failed or was prevented from consummating the offense. Although it acknowledges that the jury instruction did not contain the relevant language, the State instead invites this Court to reconsider such a requirement in an instruction. We decline to do so. Our supreme court has continued to find that an "attempt instruction" is deficient if it does not mention the failure or prevention of completion of the offense. Relying on Henderson, the court reversed an attempted rape conviction where the jury received a defective instruction regarding the elements necessary to prove the crime. Armstead v. State, 716 So.2d 576, 582-83 (Miss.1998). In *238 Armstead, the court concluded that "Henderson merely requires that the jury be instructed to find, pursuant to the language of the statute, that the defendant failed to complete the intended act or was prevented from doing so. We do not consider it an inordinate burden on the State to include such an instruction." Id. at 583.
¶ 23. This Court considers the jury instructions taken as a whole in determining the sufficiency of the trial court's instructions. However, no instruction granted by the trial court set forth the three elements of the crime as required by the applicable statute. While the State provided the jury with sufficient, credible evidence to find Thompson guilty of attempted armed carjacking, the lack of an instruction setting forth each of the necessary elements requires this Court to reverse and remand for a new trial. Because this case requires reversal, we need not address the remaining assignments of error.
¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY IS REVERSED AND REMANDED FOR A NEW TRIAL. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAUDERDALE COUNTY.
BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.
NOTES
[1] A show-up is "[a] type of pre-trial identification procedure in which a suspect is confronted by or exposed to the victim of or witness to a crime" in a one-to-one confrontation. "It is less formal than a line-up but its purpose is the same." Black's Law Dictionary 1380 (6th ed.1990).