LEE, J., for the Court:
¶ 1. Johnny Crawford was found guilty of sale of cocaine by a Jefferson County Circuit Court jury. Aggrieved of this judgment Crawford assigns as error the following: 1) whether the trial court erred in not granting a mistrial because of the State’s failure to comply with discovery by failing to identify witnesses in advance of trial; 2) whether the trial court erred in not suppressing the in-court identification because it was unduly suggestive; and 3) whether the verdict was against the over *1137 whelming weight of the evidence. We find that the evidence fully supports the verdict and therefore affirm.
FACTS
¶ 2. On April 26, 1996, Narcotics Agents James Kennedy Cotton, Art Thomas, and a confidential informant named Louis Pur-ley, met in Jefferson County, Mississippi to discuss plans to conduct an undercover drug investigation in Fayette, Mississippi. Agent Cotton searched Purley’s person and vehicle. Purley was provided a body transmitter and $60 in state funds. Purley traveled to a car wash. Agents Cotton and Thomas provided surveillance in their vehicle by listening to the transmissions over the body transmitter, but were unable to see the transaction.
¶ 3. Upon arriving at the car wash, Pur-ley asked a man if he knew where he could find some “smoke.” This man told Purley to drive around to the back. After driving around to the back, Purley was approached by a heavyset man. This person asked Purley what he wanted, and Purley replied that he wanted some “smoke,” $60 worth of crack cocaine. The heavyset man turned to another and said, “Red, there’s a guy over here wanting something.” “Red” approached the car and asked Purley how much he wanted. Purley told him and “Red” gave him three rocks of crack cocaine in exchange for fifty dollars. Purley gave $10 dollars to the first man who showed him where he could purchase the crack cocaine. After the purchase, Purley described “Red” to Agent Cotton as a black male, light complexion, small build, approximately 5’9” to 5’11”, 140 to 160 pounds, curly, salt and pepper hair, a beard and mustache, wearing a red short sleeve shirt, blue jeans, white gym shoes, and was approximately in his mid 50’s.
¶ 4. In August of 1996, Agent Cotton enlisted the help of the Sheriff of Jefferson County, Peter Walker, in identifying the suspect called “Red.” Sheriff Walker stated even though Johnny Crawford used the nickname “Cracker,” he has heard “street people” call him “Red.”
¶ 5. Agent Cotton prepared a photographic lineup that included a photograph of Crawford and presented it to Purley, who identified the picture of Crawford as the person from whom he bought crack cocaine on April 26,1996.
¶ 6. The defense called several witnesses including Larry Nichols and Ellis King. These witnesses stated that they had never known Crawford to use the nickname “Red.” Both witnesses were present at the car wash that night and stated that they did not see Crawford sell drugs.
¶ 7. Several other witnesses were called for the defense who also stated that they never knew Crawford to be called by the nickname “Red,” that they had never seen Crawford have a beard, and they had never seen Crawford wearing a short-sleeved shirt because Crawford had an injury to his right arm.
¶ 8. Crawford testified in his own defense. He rolled up his sleeve and showed the jury the disfiguring scar on his right elbow caused by a hunting accident and testified that he always wore long-sleeved shirts to cover the scar. He also testified that the only nickname he had ever used was “Cracker.” He stated that he had never seen the confidential informant, Pur-ley, until after his case began and that he never sold any illegal drugs to Purley. He also testified that he had never been involved with Kang or Nichols in the sale of illegal drugs.
¶ 9. After the jury deliberated, they found Crawford guilty of the sale of cocaine. At the sentencing hearing, the trial judge found that Crawford had, in 1985, pled guilty to five counts of possession of a controlled substance, but chose to disregard the enhancement provision and sentenced Crawford to thirty years in the Mississippi Department of Corrections.
*1138 ANALYSIS
I. WHETHER THE TRIAL COURT ERRED IN NOT GRANTING THE DEFENDANT’S MOTION FOR MISTRIAL BASED ON THE STATE’S FAILURE TO COMPLY WITH CRIMINAL DISCOVERY?
¶ 10. The defense requested discovery as allowed by Rule 9.04 of the Uniform Circuit and County Court Rules requesting everything allowed in those rules. This request included the identity of all witnesses to the crime, regardless of whether the prosecution was planning to call them as witnesses in the trial of the matter.
¶ 11. Hearings were held on March 21, 1996 and April 18, 1997, where Crawford specifically requested that the prosecution identify the two witnesses mentioned in Agent Cotton’s report of the investigation. These two witnesses were the first man who directed Purley to the back of the car wash and the other was the heavyset man that told “Red” that Purley was looking for crack cocaine. The defense was repeatedly told that the prosecution had not been able to determine who these individuals were. However, during the course of the trial when Agent Cotton was testifying, he stated that he knew who these witnesses were and had even presented the case of one of them to the grand jury the previous week.
¶ 12. After Agent Cotton’s testimony, outside the presence of the jury, the defense moved the court to dismiss the charges due to the prosecution not disclosing the names and identities of these persons. The prosecution stated that it would not be calling either as witnesses. The defense argued that it should be allowed to interview the witnesses in case they could provide any exculpatory information. The trial court determined that the defense should be allowed an opportunity to talk with the two witnesses, as the court wanted to cure any problems that occurred, and that the court did not want Crawford prejudiced in anyway. After the recess, the trial court asked the defense if the problems had been cured. The defense attorney stated that the problem was remedied, but she would like to add the two witnesses to her witness list. The court responded such an action was fine, and again asked, “So the problems you’ve had with the failure to disclose have been cured; is that correct?” Defense counsel responded “Yes, sir.”
¶ 13. The United States “Supreme Court held that the due process clause of the Fourteenth Amendment is violated where the prosecution suppresses evidence favorable to and requested by an accused, where the evidence is material either to guilt or to punishment, and which is done irrespective of the good or bad faith of the prosecution.” White v. State, 532 So.2d 1207, 1212 (Miss.1988) (citing Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)). “Exculpatory evidence in the possession of the prosecution must be turned over to the accused in a criminal proceeding.” Boches v. State, 506 So.2d 254, 263 (Miss.1987) (citing Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)). “To determine whether the non-disclosure or non-production requires reversal, this Court must decide whether the ‘omitted evidence creates a reasonable doubt [as to the accused’s guilt] that did not otherwise exist.’ ” Boches, 506 So.2d at 263.
¶ 14. The United States Supreme Court developed a materiality standard for Brady violations. Holland v. State, 705 So.2d 307, 331 (Miss.1997) (citing United States v. Agurs, 427 U.S. 97, 114, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976)). “The Court stated that no Brady violation exists where the evidence in question would not raise a reasonable doubt about guilt under the circumstances.” Holland, 705 So.2d at 331 (citing Agurs, 427 U.S. at 114, 96 S.Ct. 2392). “The Court further refined the Brady problem later by stating that there was no violation of a defendant’s Brady rights unless the omission of evidence ere- *1139 ated a ‘reasonable probability’ of changing the outcome of a given case.” Holland, 705 So.2d at 381 (citing United States v. Bagley, 473 U.S. 667, 684, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985)).
¶ 15. We conclude that there was no Brady violation in this instance. The withheld witnesses were produced to the defense, and the defense was given ample opportunity to interview the witnesses. In fact after interviewing these witnesses, the defense put them on the stand and used the newly found exculpatory evidence, through the testimony of these witnesses, to its advantage. The exculpatory evidence was put before the jury and was considered in their determination. Also, the trial judge can hardly be held to have been in error when the defense stated that any error was cured. This assignment has no merit.
II. WHETHER THE TRIAL COURT ERRED IN NOT GRANTING THE DEFENDANT’S MOTION TO SUPPRESS THE IN-COURT IDENTIFICATION OF THE DEFENDANT BECAUSE THE IDENTIFICATION PROCESS WAS IMPERMISSIBLY SUGGESTIVE?
¶ 16. Crawford asserts that the photographic line-up used in this case was impermissibly suggestive in that Agent Cotton testified that he did not select the photographs to be included in the line-up based on the description of the individual given by Louis Purley the night of the crime. Rather, Agent Cotton contacted Sheriff Peter Walker about who the sheriff knew by the name of “Red” that hung out around the car wash on Main Street in Fayette. Agent Cotton centered the photographic line-up around Crawford.
¶ 17. At the hearing on the motion to suppress Agent Cotton testified that he prepared the photographic line-up depicting Crawford and “three other black males that looked a lot like him.” Agent Cotton described the four pictures as black males with medium length hair, a slender face, medium complexion, and “pretty much all of them have facial features similar.” Agent Cotton testified Crawford’s picture was not singled out in any way and upon reviewing the line-up, the informant, Pur-ley “immediately picked out Crawford’s picture.”
¶ 18. “The admission or exclusion of evidence is largely within the discretion of the trial court.” Thompson v. State, 726 So.2d 233 (¶ 9) (Miss.Ct.App.1998) (citing Hentz v. State, 542 So.2d 914, 917 (Miss.1989)). “In determining whether to suppress evidence of a pre-trial identification, the trial court must resolve whether the identification procedure employed by law enforcement authorities was unnecessarily suggestive.” Thompson, 726 So.2d at 235 (¶ 9) (citing York v. State, 413 So.2d 1372, 1383 (Miss.1982)).
1119. Crawford argues that Pur-ley’s identification of him cannot stand in light of Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The Biggers factors come into play only if the identification procedure utilized was impermissibly suggestive. Jones v. State, 504 So.2d 1196, 1199 (Miss.1987).
Only pretrial identifications which are suggestive, without necessity for conducting them in such manner, are proscribed. A lineup or series of photographs in which the accused, when compared with the others, is conspicuously singled out in some manner from the others, either from appearance or statements by an officer, is impermissi-bly suggestive.
York, 413 So.2d at 1383 (citations omitted).
¶ 20. The in-court identification issue is usually whether a prior improperly suggestive identification process taints the in-court identification. The Biggers factors are only “evaluated with a view toward determining whether the testimony appears sufficiently reliable to overcome the taint of the prior improperly attained identification.” Gayten v. State, 595 So.2d 409, 418 (Miss.1992) (citing Foster v. State, 493 *1140 So.2d 1304 (Miss.1986); Poole v. State, 216 So.2d 425 (Miss.1968)).
¶ 21. In this case, the trial court specifically found the absence of suggestiveness in the pre-trial identification, and nothing in the record discredits this conclusion. Based on the foregoing analysis we hold that the photographic line-up was in no way impermissibly suggestive and that there was no substantial likelihood of mis-identification. Since the trial judge properly declined to suppress the identification, this assignment of error is without merit.
III. WHETHER THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 22. Crawford opines that the verdict in this case was against the overwhelming weight of the evidence; however, Crawford failed to give any legal citation to support his claim. Failure to cite to legal authority bars any consideration of the assigned error. McClain v. State, 625 So.2d 774, 781 (Miss.1993); Brown v. State, 534 So.2d 1019, 1023 (Miss.1988); Shive v. State, 507 So.2d 898, 900 (Miss.1987); Pate v. State, 419 So.2d 1324, 1326 (Miss.1982).
¶ 23. Notwithstanding this procedural bar, this issue contains no merit. In determining whether a jury verdict is against the overwhelming weight of the evidence, the trial court is required to view all of the evidence in the light most favorable to the verdict. Strong v. State, 600 So.2d 199, 204 (Miss.1992). As to matters upon which the evidence was in conflict, the court should assume that the jury resolved the conflict in a manner consistent with the verdict. Gossett v. State, 660 So.2d 1285, 1294 (Miss.1995). The court must grant a new trial if it reaches the conclusion, based upon a review of the evidence in this light, that to sustain the verdict would work a manifest injustice. Burrell v. State, 613 So.2d 1186, 1191 (Miss.1993).
¶ 24. There was ample evidence consistent with the verdict, evidence of such weight and quality that fairminded jurors in the exercise of impartial judgment could convict. Crawford’s last assignment of error is without merit.
¶ 25. THE JUDGMENT OF THE CIRCUIT COURT OF JEFFERSON COUNTY OF CONVICTION OF SALE OF COCAINE AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JEFFERSON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, PAYNE, AND THOMAS, JJ., CONCUR.
MOORE, J., NOT PARTICIPATING.