# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-00122-COA

**TROYLANDEN CORTEZ HARRIS A/K/A**              **APPELLANT**
**TROYLANDEN C. HARRIS A/K/A TROYLANEN**
**HARRIS A/K/A TROYLANDEN HARRIS A/K/A**
**TROYLAND CORTEZ HARRIS**

**v.**

**STATE OF MISSISSIPPI**              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/17/2015 |
| TRIAL JUDGE: | HON. JEFF WEILL SR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: KATY TAYLOR GERBER |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 09/05/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., FAIR AND WILSON, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.    A Hinds County jury found Troylanden Harris guilty of attempted armed carjacking; the Circuit Court of Hinds County sentenced him to twenty-five years in the custody of the Mississippi Department of Corrections (MDOC), with twenty years to serve, five years suspended, and five years of supervised probation.  Harris filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial, which the court denied. Harris now appeals, asserting the following issues: (1) the trial court erred in admitting his

written confession; (2) the trial court erred in failing to instruct the jury on the essential elements of the crime; (3) the trial court erred in refusing his request for a lesser-included-offense instruction; and (4) he received ineffective assistance of counsel. Because we find plain error in the court's failure to properly instruct the jury, we reverse and remand.

FACTS

¶2. On January 14, 2013, Henry Judd and his girlfriend, Jasmine Polly, were driving Judd's 2004 Nissan Titan to the end of their driveway. Judd exited the Titan to move another car that was blocking the driveway; he left Polly in the passenger seat with the Titan still running. As he did so, two men in a Mercury Mountaineer drove up alongside the Titan. The driver of the Mountaineer stayed in the vehicle, while Harris exited. With his face partially covered, Harris opened the Titan's passenger door and demanded that Polly get out. When Polly refused, Harris held a Glock .40-caliber handgun to her leg, prompting Polly to exit the vehicle. Judd saw the commotion and ran back toward the Titan. Judd pinned Harris against the Mountaineer, causing the covering to fall from Harris's face. Judd realized that he knew Harris. Harris apologized to Judd and reentered the Mountaineer, which quickly drove away.

¶3. Judd called the Jackson Police Department and Officer Lincoln Lampkin was dispatched to the scene. Judd identified Harris as the suspect to Officer Lampkin. Polly later picked Harris out of a photo lineup.

¶4. On February 5, 2013, the Jackson Police Department responded to a disturbance call for an unrelated incident. While responding to the call, Officer Lampkin recognized Harris

2

and arrested him for the attempted armed carjacking from several weeks earlier.

¶5.    Detective Kenneth Dunn with the Jackson Police Department interviewed Harris after his arrest.  Harris signed a waiver-of-rights form prior to being interviewed, thereby waiving his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).  At the bottom of the waiver form was a typed segment, which reads as follows:

> My name is Troylanden Harris . . . .[1]  I am here at police HQ talking to Detective Kenneth Dunn[.]  I have waived my rights and will provide Detective Dunn with a statement.
>
> Q.    Did you attempt to carjack a [w]hite] [N]issan Titan?
>
> A.    Yes[.]
>
> Q.    Did you pull a gun and put it up to the driver[']s head?
>
> A.    I didn't put it to her head[;] I had it down by the seatbelt pointed down and I told her to get out.  She said[,] "No." [A]t that time "Henry was coming to the truck."
>
> Q.    Who is Henry?
>
> A.    A guy I grew up with[.]
>
> Q.    What did he say to you?
>
> A.    He called my name and we made eye contact[;] I said[,] "Henry[,]" and that's when I said[,] "Henry it[']s over[.]" He said[, "O]k[;] it[']s over["];] I told him I'm [through] with it.  When I left[,] I went home[,] and he called my mother's phone.
>
> Q.    Did Henry have a gun?
>
> A.    Umm hmm[.]

---

[1] We have redacted the portion of Harris's statement including his personal information, as it is not relevant to this opinion.  However, the remainder of the statement is produced here, verbatim.

Q. Do you know what kind?

A. I wanna say a .32[.]

Q. When you pulled up to the truck did you know whose truck it was?

A. No sir, I thought it was just running[.]

Q. Where is the gun that you had?

A. I threw it in the river on Eminence Row under the bridge[.]

Beside each answer, Harris hand wrote his initials, "TH." Below this segment, the following was typed:

****End of [w]ritten statement****

Rest of interview audio taped . . . .

Throughout this opinion, we refer to this entire segment—the typed questions and answers, Harris's handwritten initials, and the two phrases concluding the statement—as the "written confession."

¶6. At a pretrial hearing on September 9, 2015, defense counsel requested a copy of the audio tape that was referenced at the end of the written confession. The State told defense counsel that it would check with the investigator who handled Harris's interview to see if he knew the whereabouts of the audio tape. At a second pretrial hearing on October 29, 2015, defense counsel again requested the audio tape. The following conversation transpired:

| | |
|---|---|
| BY [DEFENSE COUNSEL]: | And my other request on that motion was that if they can't provide [the audio tape], then we would ask that they not be allowed to bring anything up about his confession or the audio or anything like that. |

4

| | |
|---|---|
| BY THE COURT: | All right. How are we coming on that? Time's a wasting. |
| BY [THE STATE]: | Your Honor, Mr. Monroe is no longer with the Hinds County DA's Office, but all the evidence has been pulled and there was no audio recording in the evidence. [Defense counsel] is welcome to come up to our office. I have all the evidence in that case. However, if an audio was listed and we don't have it, the State would concede that and we won't get into a confession. But I'll have to review it with him. As of the State's review, there was no audio disk in the file. |
| BY THE COURT: | All right. So your position is that if it was listed and it no longer exists, then the State won't use any confession or admission that would have been taken during the recording of that? |
| BY [THE STATE]: | Yes, Your Honor. |
| BY THE COURT: | All right. Very well. So do you need my help anymore on that? |
| BY [DEFENSE COUNSEL]: | I believe that satisfies my request from the motion. If they can't provide the audio, then no mention about the confession or anything like that. |

¶7.   On the date of his trial, Harris did not appear in court. Defense counsel requested a continuance, which was apparently[2] granted. On the date of Harris's rescheduled trial, he briefly appeared in court, but was not present when his trial actually began. As a result, the trial court granted the State's motion to try Harris in absentia.

_____

[2] We say "apparently" because the record contains no order granting a continuance. However, the record suggests that the trial was continued.

5

¶8.    During the course of trial, the audio tape was referenced several times.  Shortly after opening statements, the State asserted that it intended to offer Harris's written confession into evidence and sought to have certain information redacted, including Harris's personal information and the last sentence regarding the audio recording.  Defense counsel objected to the admission of the written confession based on the State's pretrial representation that it would not get into Harris's confession if it could not produce the audio tape.  However, defense counsel agreed with the State's suggested redactions, "assuming [the written confession] does be [sic] allowed in."  The following conversation took place:

| | |
|---|---|
| BY THE COURT: | All right.  So you're going to object to the admission of the statement? |
| BY [DEFENSE COUNSEL]: | Yes, sir. |
| BY THE COURT: | All right.  What's the basis of your objection? |
| BY [DEFENSE COUNSEL]: | Well the basis is that the statement says that the rest of the interview was recorded on audio.  And in speaking with my client when we did get together, he said he never made any confessions.  And so if the State made a recorded audio of their interview with him, my contention is that the jury should either hear the whole statement that my client made or none of the alleged confession that he made. |
| BY THE COURT: | All right.  What says the State? . . . All right.  Go ahead. |
| BY [THE STATE]: | Your Honor, we had a prior agreement.  This is the *Miranda* waiver form, and this part has been dictated.  I also believe he initialed on the *Miranda* part.  We're not |

6

getting into the audio since we don't have it. But since he initialed on each individual line that generally means he attested to each statement that was transcribed.

We believe this is a fair statement signed, dated by the defendant. And the detective will be here for cross[-]examination if the defendant has any questions about the statement or lack thereof.

BY THE COURT:                    Do you plan to admit the audio?

BY [THE STATE]:                  Your Honor, the audio was not recovered.

Defense counsel again reiterated his argument regarding the tape, stating, "My objection is: if my client made a statement, the entire statement should be made available for the jury." Defense counsel made no mention of his pretrial conversation with the State, wherein the State agreed that if the audio tape was listed in discovery but not recovered, then the written confession would not be allowed in. Ultimately, the Court overruled defense counsel's objection.

¶9.    Later, the State called Detective Dunn to testify and offered the waiver form, including the written confession, into evidence. Defense counsel asked to approach the bench, and the court sent the jury out of the courtroom. Defense counsel requested clarification regarding the written confession and asked if he would have an opportunity to cross-examine Detective Dunn as to whether there was more to the interview than just the written confession being offered. Defense counsel conceded, "I know I can't mention about [sic] the audio because we redacted that. But I can ask if there was more than just what's being admitted." Defense counsel made a proffer regarding why he wanted to cross-examine

7

Detective Dunn, and then reasserted his motion to exclude the written confession on the basis that it was not a complete statement of the alleged interview between Detective Dunn and Harris. The court overruled defense counsel's objection and then found that the written confession should be admitted without redacting the final sentence regarding the audio recording. As before, no mention was made regarding the pretrial agreement between the State and defense counsel with respect to the written confession.

¶10.    At the conclusion of the trial, the jury found Harris guilty of attempted armed carjacking. On December 17, 2015, the court sentenced Harris to twenty-five years in the custody of the Mississippi Department of Corrections, with five years suspended and five years of supervised probation. On December 23, 2015, Harris filed a motion for a JNOV or, in the alternative, a new trial, which was denied on December 29, 2015. On January 6, 2016, Harris's trial counsel filed a motion to withdraw and for appointment of appellate counsel, and to allow Harris to file an out-of-time appeal in forma pauperis; the court granted Harris's motion and Harris now appeals.[3]

DISCUSSION

1.      *Whether the trial court erred in admitting Harris's written confession*

¶11.    Harris maintains that the trial court erred when it admitted his written confession for two reasons: (1) the State committed a discovery violation; and (2) the State reneged on its prior agreement with defense counsel that it would not introduce evidence of Harris's

---

[3] We note that Harris's appeal was not actually filed out of time, as the filing of his motion for a JNOV or, in the alternative, a new trial tolled the time in which he could file his notice of appeal under Rule 4 of the Mississippi Rules of Appellate Procedure.

confession if it could not also produce the audio-recorded interview.

¶12. First, Harris asserts that the State committed a discovery violation by failing to produce the audio tape accompanying Harris's written confession. The State, in contrast, argues that it was never able to locate the audio tape. We decline to address this issue, because it is rendered moot by the fact that we are reversing and remanding this case on another ground, to be discussed below.

¶13. Second, Harris argues that the State was bound by its pretrial agreement not to introduce the written confession into evidence without its accompanying audio tape. The State argues in response that it did not technically make such an agreement prior to trial; rather, the State maintains that it merely agreed that "if an audio [tape] was listed and we don't have it, the State would concede that and we won't get into a confession." After reviewing the transcript from the pretrial hearing, it is this Court's opinion that the State and Harris's defense counsel reached an agreement, wherein the State agreed not to address the written confession if it could not locate the audio tape. The State admitted that it never recovered an audio tape. Thus, we agree with Harris, and find that the trial court erred in allowing the State to question him regarding the written portion of the confession. However, we find this error harmless, as there was other evidence sufficient to sustain Harris's conviction had the jury been properly instructed.

2. *Whether the trial court erred in instructing the jury*

¶14. Harris maintains that the trial court failed to instruct the jury on the essential elements of attempted armed carjacking. Specifically, Harris contends that the essential element

9

rendering this crime an "attempt"—that Harris either failed or was prevented from consummating the offense—was missing from the instructions. The trial court read the following instructions to the jury:

> Troylanden Harris has been charged with the offense of attempted armed carjacking. If you find from the evidence in this case beyond a reasonable doubt that number one; Troylanden Harris, on or about the 14th day of January 2013, in the First Judicial District of Hinds County did, number two; willfully, unlawfully and felonously [sic] and knowingly, whether against resistance or by sudden or stealthy seizure or snatching or by putting in fear or attempting to do so, or by any other means, take a motor vehicle from the actual possession of Jasmine Polly; number three, said motor vehicle described as a 2004 Nissan Titan being then and there the personal property of Henry Judd; number four, Troylanden Harris, being then and there armed with a deadly weapon, to wit a handgun, or any object capable of inflicting death or serious bodily harm, then you shall find the defendant guilty of attempted armed carjacking.

In support of his argument, Harris cites *Thompson v. State*, 726 So. 2d 233, 237 (¶21) (Miss. Ct. App. 1998), in which this Court found that the lack of an instruction setting forth the element of attempt in a case involving attempted armed carjacking necessitated reversal.

¶15. In contrast, the State contends that the very nature of the statute under which Harris was indicted invokes the element of attempt, precluding the need for a more explicit jury instruction. Mississippi Code Annotated section 97-3-117(1) (Rev. 2014) provides, in pertinent part: "Whoever shall knowingly or recklessly by force or violence, whether against resistance or by sudden or stealthy seizure or snatching, or by putting in fear, or attempting to do so, or by any other means shall take a motor vehicle from another person's immediate actual possession shall be guilty of carjacking." The State contends that the jury instructions were therefore sufficient.

10

¶16. "Our supreme court has continued to find that an 'attempt instruction' is deficient if it does not mention the failure or prevention of completion of the offense." *Thompson*, 726 at 237 (¶22); *see also Armstead v. State*, 716 So. 2d 576, 582-83 (¶29) (Miss. 1998) (where the supreme court, in an attempted rape case, reiterated the importance of an instruction that the defendant failed to complete the intended act or was prevented from doing so); *Henderson v. State*, 660 So. 2d 220, 222 (Miss. 1995) (where the supreme court found that a jury instruction for attempted capital rape that failed to mention "failure or prevention of completion" of the act did not adequately set forth all of the necessary elements of the crime). In *Armstead*, 716 So. 2d at 583 (¶28), the State contended, as it contends here, that inclusion of the meaning of the word "attempt" in the jury instructions was unnecessary, as the jury would have been able to understand the meaning of attempt based on the defendant's charges alone. However, we reiterate the *Armstead* court's holding that "there is little excuse for the omission of this instruction," as the inclusion of such an instruction does not constitute "an inordinate burden on the State." *Id*. at (¶29).

¶17. Here, Harris's counsel did not bring to the attention of the trial court the jury instruction's omission of proper attempt language, nor did Harris's counsel offer his own instruction that provided more adequate language. Despite the fact that Harris did not object to the instruction at trial or otherwise bring to the court's attention the instruction's deficiency, we will not impose the procedural bar, and will consider this issue under the plain-error doctrine.

¶18. "A defendant's failure to object to a jury instruction at trial creates a procedural bar

11

that prohibits appellate review of the issue, unless there is plain error." *Fitzpatrick v. State*, 175 So. 3d 515, 522 (¶31) (Miss. 2015) (reh'g denied Oct. 15, 2015) (citation omitted). "Under such circumstances, [an appellate court] will find plain error only where a fundamental right of the defendant has been violated." *Id*. (citations omitted). "Failure to submit to the jury the essential elements of the crime is fundamental error." *Hunter v. State*, 684 So. 2d 625, 636 (Miss. 1996). Furthermore, "even though the defendant did not present an acceptable instruction, the State was obligated to do so." *Id*.

¶19. Appellate courts "must review jury instructions as a whole to ascertain whether the jury was fully and fairly instructed regarding the applicable law." *White v. State,* 195 So. 3d 765, 768 (¶7) (Miss. 2016) (citation omitted). "Where the jury had incorrect or incomplete instructions regarding the law, our review task is nigh unto impossible and reversal is generally required." *Neal v. State*, 451 So. 2d 743, 757 (Miss. 1984). Here, we find that the jury instructions as a whole did not fully and fairly instruct the jury as to the elements of attempted armed carjacking. Therefore, we reverse with respect to this issue.

     *3.    Whether the trial court erred in refusing Harris's request for a lesser-included-offense instruction*

¶20. Harris contends that the trial court erred in refusing to instruct the jury on attempted carjacking as a lesser-included offense of attempted armed carjacking. "Where there exists a claim that a defendant was entitled to a lesser-included offense instruction, [appellate courts] conduct de novo review, as this is a question of law." *Anderson v. State*, 79 So. 3d 501, 505 (¶16) (Miss. 2012). In *Anderson*, the supreme court reiterated:

    An instruction should be granted unless the trial judge—and ultimately this

12

Court—can say, taking all the evidence in the light most favorable to the accused and considering all reasonable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense (and conversely not guilty of at least one essential element of the principal charge.)

*Id*. at (¶15) (citation omitted). The crux of this inquiry, then, is whether there is *some* evidence to support the instruction requested. *Id*.

¶21. Here, Harris maintained that the trial court erred when it rejected jury instructions D-2 and D-3—which presented attempted carjacking as a lesser-included offense of attempted armed carjacking—on the basis that the evidence was insufficient to show that Harris used a gun. In response, the State points out that Polly testified that Harris put a gun to her leg, and that Harris admitted in his written confession that he put the gun to Polly's leg as he was attempting to remove her from the vehicle.

¶22. We agree with the State. Harris presented no evidence to rebut Polly's assertion that he used a gun when attempting to carjack her. Thus, we find that no reasonable jury could have found that Harris was unarmed when he attempted the carjacking, and we, therefore, find that the trial court did not err in refusing to give an instruction on the lesser-included offense of attempted carjacking.

*4.    Whether Harris received ineffective assistance of counsel*

¶23. Traditionally, ineffective-assistance-of-counsel claims are more appropriately brought in the form of post-conviction-relief motions rather than on direct appeal, because appellate courts reviewing a direct appeal are confined to the trial-court record, which may be insufficient to adequately address the claim. *Reed v. State*, 204 So. 3d 785, 789 (¶15) (Miss.

13

Ct. App. 2016).  However, Rule 22(b) of the Mississippi Rules of Appellate Procedure

provides the following with respect to post-conviction issues raised on direct appeal:

> Issues which may be raised in post-conviction proceedings may also be raised on direct appeal if such issues are based on facts fully apparent from the record.  Where the appellant is represented by counsel who did not represent the appellant at trial, the failure to raise such issues on direct appeal shall constitute a waiver barring consideration of the issues in post-conviction proceedings.

Here,  Harris's claim concerns facts which are fully apparent from the record, since the sole

question presented to us is whether trial counsel was ineffective in failing to move for a

continuance or mistrial upon learning that Polly had given a written statement to police which

the State did not provide to the defense in discovery.  Further, Harris is being represented on

appeal by counsel who did not represent him at trial; thus, Harris was required to present this

issue on direct appeal or waive it in any subsequent post-conviction proceedings he may

undertake.[4]  Thus, his claim of ineffective assistance of counsel is properly before this Court.

¶24.    To establish ineffective assistance of counsel, a defendant must demonstrate: (1) that

his attorney's performance was deficient and (2) such deficiency was prejudicial.  *Strickland*

*v. Washington*, 466 U.S. 668, 687 (1984).  "There is a strong presumption that counsel's

performance falls within the range of reasonable professional assistance."  *Timmons v. State*,

176 So. 3d 168, 176 (¶32) (Miss. Ct. App. 2015) (citation omitted).  However, the defendant

may rebut that presumption by demonstrating that, but for his attorney's errors, there exists

---

[4] See *Brandon v. State*, 109 So. 3d 128, 134-135 (¶24) (Miss. Ct. App. 2013), in which this Court heard an ineffective-assistance-of-counsel claim because the appellant was represented by different counsel on appeal than at trial, and because the claim was based on facts fully apparent from the record.

"a reasonable probability" that a different result would have been reached at trial. *Stringer v. State*, 627 So. 2d 326, 329 (Miss. 1993).

¶25.    In arguing that his counsel was ineffective, Harris relies on Rule 9.04(I) of the Uniform Rules of Circuit and County Court,[5] which provides several remedies that the court may take "[i]f during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason."  However, Harris's argument is misplaced, because the prosecution did not attempt to introduce Polly's statement; rather, Harris's own counsel brought up the statement.  While Harris's counsel never objected to the fact that Polly's statement was excluded from his discovery, the record indicates that the State never even referenced such a statement at trial.  Thus, Harris is afforded no remedy under Rule 9.04(I), and he has presented no basis for mistrial.  As such, he presented no evidence that his counsel was deficient, and failed to satisfy the first prong under *Strickland*.  Therefore, Harris's claim of ineffective assistance of counsel is without merit.

¶26.    As noted, we reverse Harris's judgment of conviction and sentence because of the deficient jury instruction.  Our caselaw makes it abundantly clear that an attempt instruction is insufficient if it neglects to mention "the failure or prevention of completion of the offense." *Thompson*, 726 So. 2d at 237 (¶22).  As the jury instructions in this case contained no such language, we find that they were insufficient.  Accordingly, we reverse and remand

_____

[5] The Uniform Rules of Circuit and County Court relating to criminal practice were recently superseded by the Mississippi Rules of Criminal Procedure, effective July 1, 2017. The former rule is relevant here because it was in effect at the time of Harris's trial.

15

this case to the circuit court.

¶27.    **REVERSED AND REMANDED.**

**ISHEE, FAIR, GREENLEE AND WESTBROOKS, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WILSON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. LEE, C.J., GRIFFIS, P.J., AND CARLTON, J., DISSENT WITHOUT SEPARATE WRITTEN OPINION.**