DIAZ, J.,
for the Court:
¶ 1. Glen Mason was convicted of burglary of a dwelling house and aggravated assault. From these convictions, he perfects his appeal to this Court and argues that the trial court erred (1) in overruling his motion for a change of venue, (2) in refusing to suppress the photograph, lineup, and in-court identification testimony, and (3) in denying his motion to suppress hair sample evidence. Finding his arguments without merit, we affirm.
FACTS
¶ 2. On the morning of October 18, 1996, Frank Merchant left his home at approximately 8:00. About an hour later, Merchant returned to his home and found a white Buick automobile parked in his carport. Upon entering the house, Merchant saw that his back door was broken. He *1055 then heard a noise coming from his daughter’s room, so he walked into her room and saw a man he identified as the appellant, Glen Mason, behind the stereo system rolling up the wires. According to Merchant, Mason began moving toward the door, at which time Merchant observed Mason reach into his pants pocket. Mason then pulled a gun from his pocket and shot Merchant above his left eye. Mason fired twice more, hitting Merchant in his right shoulder. As Mason was fleeing the house, Merchant found his own gun and ran outside and began firing at Mason’s car as Mason drove away.
¶ 8. Merchant testified that Mason took stereo speakers, cigarette lighters, and some jewelry from his house on the day of the burglary. Merchant was also able to recall that Mason’s car had Attala County license plates and that the last three digits were 370. At the request of law enforcement officials, the Attala County Tax Collector’s office searched their records and found only one white Buick car matching Merchant’s description. After determining that the automobile was owned by Glen Mason’s parents, Mason was arrested and charged with burglary of a dwelling house and aggravated assault. Following a jury trial, Mason was found guilty as charged. It is from these convictions that Mason now brings forth his appeal.
DISCUSSION
I. DID THE TRIAL COURT ERR IN OVERRULING MASON’S MOTION FOR A CHANGE OF VENUE?
¶ 4. Prior to the trial in this case, Mason made a motion for a change of venue, wherein he alleged that due to the extensive pre-trial publicity as well as the victim’s notoriety in the community, that his trial should be moved to a different location. He further charged that since he is black and Merchant is white, that the feelings of outrage within the community would deny him his right to a fair trial. In support of his motion, Mason attached copies of two newspaper articles which were printed prior to the trial and which contained details of the crime. Mason also provided the affidavits of two Leake County citizens, who stated that it would be in the best interest of justice that the case be tried in another location.
¶ 5. “Where a defendant presents the court with an application for change of venue accompanied by two affidavits which affirm the defendant’s inability to receive a fair trial in a particular location, a presumption is created that it is impossible for a fair trial to be had in that place.” Hickson v. State, 707 So.2d 536(¶ 22) (Miss.1997). This presumption may be rebutted if the State can show that an impartial jury was impaneled by the trial court. Id. When the State makes such a showing of impartiality, we must defer to the trial court’s denial of the change of venue request, for the venue decision is within the discretion of the lower court. Id.
¶6. The trial judge conducted a hearing in the present case in order to determine the merits of Mason’s motion. At this hearing, the State called seven witnesses with extensive ties to Leake County, who all testified that they were unaware of any general feelings of ill will in the community against Mason. The witnesses were also unable to recall any extensive pre-trial publicity associated with the case. The defense then called six witnesses to testify in support of the motion; however, only one of the six defense witnesses rendered an opinion that Mason would be unable to receive a fair trial in Leake County.
¶ 7. “[T]his Court will not disturb the ruling of the lower court where the sound discretion of the trial judge in denying change of venue was not abused.” Harris v. State, 537 So.2d 1325, 1328 (Miss.1989). In determining if a judge has abused that discretion, we look to the completed trial to ascertain whether the accused was prejudiced. Winters v. State, 473 So.2d 452, 457 (Miss.1985); see also *1056 Fisher v. State, 481 So.2d 203, 220 (Miss.1985) (holding that motion for change of venue should be granted where “under the totality of the circumstances it appears reasonably likely that, in the absence of such relief, the accused’s right to a fair trial may be lost”). After a careful review of the record, we are unconvinced by Mason’s argument that he was denied a fair trial. Accordingly, we must defer to the trial court’s decision on this matter finding that venue was proper in Leake County.
II. DID THE TRIAL COURT ERR IN REFUSING TO SUPPRESS THE VICTIM’S IDENTIFICATION TESTIMONY?
¶ 8. After the burglary and assault on Frank Merchant, police officers arrived at the Merchant home to interview him regarding the crimes. According to Merchant, a photograph of Mason was protruding from an officer’s legal pad. Without prompting, Merchant volunteered, “This is the fellow right here that was in here.” Later that evening, Merchant went to the sheriffs office to attempt to identify his assailant from a lineup which, according to Merchant, consisted of six to eight men of approximately the same age and size. Merchant was able to positively identify his attacker as Mason. Testifying outside the presence of the jury, Merchant stated that no one did or said anything to suggest to him which of the men to identify as his assailant. Then, on direct examination, Merchant identified Mason as the person who had invaded his home and assaulted him. On appeal, Mason argues that the out-of-court identifications were so impermissi-bly suggestive as to taint Merchant’s in-court identification and that the lower court erred in denying his motion to suppress the identification testimony.
¶ 9. “It is, first of all, apparent that the primary evil to be avoided is ‘a very substantial likelihood of irreparable misidentification.’” Neil v. Biggers, 409 U.S. 188, 198, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) (citing Simmons v. United States, 390 U.S. 377, 384, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)). “It is the likelihood of mis-identification which violates a defendant’s right to due process.” Biggers, 409 U.S. at 198. Therefore, we must question whether, under the “totality of the circumstances,” the identification was rehable. Id. at 199. In answering this question, we must consider “the opportunity of the witness to view the criminal at the time of the crime, the witness’ degree of attention, the accuracy of the witness’ prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.” Id. at 199-200. “Even though the pretrial identification is impermissibly suggestive,” an in-court identification should only be excluded if the conduct, considered under the Biggers factors, “gave rise to a very substantial likelihood of irreparable misidenti-fication.” York v. State, 413 So.2d 1372, 1384 (Miss.1982).
¶ 10. Applying these factors, we disagree with Mason’s assertion that Merchant’s in-court identification was tainted. Merchant had ample opportunity to observe Mason during the commission of the crimes. The burglary and aggravated assault occurred at approximately 9:00 in the morning, thus Merchant had plenty of light by which to see Mason. There can be no doubt that Merchant was giving his full attention to Mason at the time he was being shot, and there was no discrepancy between Merchant’s description of Mason and his actual description. Merchant was unequivocal in his in-court identification. In response to the prosecutor’s question asking Merchant “[a]re you positive that the person you have identified in the courtroom today is the person that burglarized your home and shot you?,” Merchant stated: ‘Yes, sir, I am.” Furthermore, the line-up took place on the same day the crimes were committed. Weighing all the factors set out in Biggers, we find no substantial likelihood of misidentification.
*1057 ¶ 11. Also in this assignment of error, Mason argues that his right to the presence of counsel during the lineup was violated. “Under our law a participant in a lineup has a right to have a lawyer present if the lineup is held after adversarial proceedings had been initiated against him.” Magee v. State, 542 So.2d 228, 233 (Miss.1989). Based upon Deputy Sheriff Willie Jones’s testimony that Mason had not been formally charged with a crime at the time the lineup was conducted, there is some question as to whether Mason’s right to counsel had attached. However, even if we were to assume that Mason’s right to counsel at the lineup was violated, the point profits him nothing. As we have found above, nothing that occurred at the lineup impermissibly tainted Merchant’s in-eourt identification testimony. Therefore, this assignment of error is without merit.
III. DID THE TRIAL COURT ERR IN DENYING MASON’S MOTION TO SUPPRESS HAIR SAMPLE EVIDENCE?
¶ 12. Several hours after Merchant’s home was burglarized and he was shot, Merchant discovered a baseball cap which his assailant had left behind. Merchant found the cap in the same room where he had initially encountered the intruder. Merchant gave the cap to law enforcement officials who in turn sent the cap to the Mississippi Crime Laboratory for examination. Joe Andrews, Associate Director of the Crime Lab, testified for the State and revealed that he had found hair on the inside of the cap. Andrews then compared the hair retrieved from the cap with that obtained from Glen Mason by way of search warrant. According to Andrews, the hair found in the cap had the same microscopic characteristics as the head hairs submitted by Mason. Prior to the trial in this matter, counsel for Mason filed a motion to suppress the hair sample evidence, alleging that no probable cause existed for the issuance of a search warrant. The trial judge heard testimony on the motion and concluded that law enforcement officials had probable cause to acquire a search warrant for Mason’s hair. Thus, Mason’s motion to suppress was overruled.
¶ 13. In the present case, Merchant had previously identified Mason from a photograph as well as from a lineup. Merchant had also aided the law enforcement officials in determining that the car which was parked at the Merchant home during the burglary and assault belonged to Mason’s parents. Then, Merchant discovered a baseball cap in the same room where he found Mason rolling up the stereo wires. Clearly, there was a need to attempt to match the hair found inside the cap with the hair of the person Merchant claimed had burglarized his home and shot him. “The overriding function of the Fourth Amendment is to protect personal privacy and dignity against unwarranted intrusion by the State.” Schmerber v. California, 384 U.S. 757, 767, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). The facts of this case unquestionably warranted a search and seizure of Mason’s hair and thereby constituted probable cause for the issuance of the search warrant. See Bevill v. State, 556 So.2d 699, 713 (Miss.1990).
¶ 14. Also in this assignment of error, Mason argues that his attorney was not notified of any proceedings regarding obtaining a warrant for the taking of hair samples. Thus, Mason complains that he was denied his right to counsel. Had Mason been subjected to interrogation at this point, he would have had the right to the presence and assistance of counsel in order to safeguard his privilege against self-incrimination. Ormond v. State, 599 So.2d 951, 956 (Miss.1992). However, the seizure of Mason’s hair sample did not involve attempts to obtain testimony. Thus, there was no need for the presence of counsel to protect that privilege. Id. at 957. Accordingly, Mason’s final assignment of error is dismissed as lacking in merit.
*1058 ¶ 15. THE JUDGMENT OF THE LEAKE COUNTY CIRCUIT COURT OF CONVICTION ON COUNT I OF BURGLARY OF A DWELLING HOUSE AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $5,000 AND COUNT II OF AGGRAVATED ASSAULT AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH THE SENTENCE IMPOSED IN COUNT II TO RUN CONSECUTIVELY TO THAT IMPOSED IN COUNT I, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, IRVING, KING, LEE, PAYNE, AND SOUTHWICK, JJ„ CONCUR.