MODIFIED OPINION ON MOTION FOR REHEARING
BRIDGES, J.,
for the Court.
¶ 1. The appellant’s motion for rehearing is denied. The original opinion is withdrawn and this opinion is substituted therefor.
¶ 2. The grand jury of Harrison County indicted Obbie Bernard Murphy as an habitual offender on counts of robbery, carjacking, attempted carjacking, and kidnap- *1033 ing. Murphy was found guilty on all counts and was sentenced to serve a term of forty-five years for the charges of robbery, carjacking, and attempted carjacking and thirty-five years for the charge of kidnaping, to run concurrently with the first sentence without the possibility of parole. It is from that judgment and conviction that Murphy now appeals.
STATEMENT OF THE ISSUES
I. WHETHER THE TRIAL JUDGE ERRED WHEN HE SUSTAINED AN OBJECTION AGAINST ONE OF MURPHY’S PEREMPTORY STRIKES BECAUSE IT DISCRIMINATED ON THE BASIS OF RACE.
II. WHETHER THE STATE CONDUCTED AN IMPERMISSIBLY SUGGESTIVE IDENTIFICATION PROCEDURE WHICH RESULTED IN AN IRREPARABLE MIS-IDENTIFI CATION.
III. WHETHER THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT MURPHY HAD THE CRIMINAL INTENT TO KIDNAP CHRYSTAL STEVENS.
IV. WHETHER THE TRIAL JUDGE ERRED WHEN HE ADMITTED A STATEMENT MADE BY MURPHY.
¶ 3. Murphy filed his pro se supplemental brief setting forth two other issues, both of which were addressed in our majority opinion but not specifically referred to. We now address those issues although the State, in its brief, did not respond to them. We now specifically add those two issues that are verbatim from Murphy’s supplemental brief.
V. THAT THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT THE DEFENDANT PUT NICOLETTE STUBB’S [sic] IN FEAR OF IMMEDIATE INJURY TO HER PERSON.
VI. THAT THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT, THAT THE DEFENDANT TOOK FROM CRYSTAL DAWN STEVEN’S IMMEDIATE ACTUAL POSSESSION, A MOTOR VEHICLE TO WIT: ONE (1) CHEVROLET [sic] CAMARO.
FACTS
¶ 4. On August 14, 1999, Murphy walked into a Shell Gas Station located on Pass Road in Gulfport, Mississippi. According to Nicole Stubbs, an employee who was working at the time in question, Murphy walked in and out of the store several times. Stubbs testified that Murphy finally approached her carrying a six-pack of beer. After ringing up the beer and telling him the total, Murphy then told her to give him all of the money in the cash register. After receiving the money, Murphy asked for some cigarettes, and then left the store.
¶ 5. Stubbs further testified that after walking out of the store, Murphy approached a man sitting in a truck and after having a brief conversation, he then proceeded to walk over to a gray Chevrolet Camaro. Chrystal Stevens was sitting in the passenger seat of the Camaro. Murphy told Stevens to get out of the car, but she informed him that she could not because the door was bound shut with a bungee cord. Because the keys were left in the ignition, Murphy got into the car and drove away. While stopped at a red light, Stevens took the opportunity to push really hard on the door and when it opened, she quickly exited the vehicle. A *1034 short time later, police found the Camaro and Murphy in front of a nearby residence.
ANALYSIS
I. WHETHER THE TRIAL JUDGE ERRED WHEN HE SUSTAINED AN OBJECTION AGAINST ONE OF MURPHY’S PEREMPTORY STRIKES BECAUSE IT DISCRIMINATED ON THE BASIS OF RACE.
¶ 6. “On review, the trial court’s determinations under Batson are afforded great deference because they are, in large part, based on credibility.” McGilberry v. State, 741 So.2d 894, 923 (¶ 118) (Miss.1999) (citing Coleman v. State, 697 So.2d 777, 785 (Miss.1997)). “This Court will not reverse any factual findings relating to a Batson challenge unless they are clearly erroneous.” Id. The Mississippi Supreme Court has held that the trial judge is afforded great deference in determining if the expressed reasons for exclusion of a venire person from the challenged party is in fact race neutral. Stevens v. State, 806 So.2d 1031, 1047(¶ 70) (Miss.2001) (citing Tanner v. State, 764 So.2d 385, 393(¶ 14) (Miss.2000)). In Stewart v. State, the court held that “one of the reasons the trial court is granted such deference in a Batson issue is because the demeanor of the attorney making the challenge is often the best evidence on the issue of race neutrality.” Stewart v. State, 662 So.2d 552, 559 (Miss.1995).
¶ 7. Murphy exercised peremptory strikes on two jurors who are white which caused the State to make a Batson challenge. Murphy argues that he had a bad feeling about these two jurors based on their demeanor during voir dire. The court held that this was not a race neutral reason and denied the peremptory challenge.
¶ 8. The court in Davis v. State, 660 So.2d 1228, 1242 (Miss.1995), reiterated a list of reasons accepted as race neutral. “Included among those reasons: age, demeanor, marital status, single with children, prosecutor distrusted juror, educational background, employment history, criminal record, young and single, friend charged with crime, unemployed with no roots in community, posture and demeanor indicated juror was hostile to being in court, juror was late, short term employment.” Id. The Mississippi Supreme Court has also accepted demeanor as a legitimate, race neutral basis for a peremptory challenge. Walker v. State, 671 So.2d 581, 628 (Miss.1995). However, while demeanor can be sufficient to support a claim that a peremptory strike was race neutral, the trial judge must assess all of the evidence before him. Stevens, 806 So.2d at 1047-48(¶ 70).
¶ 9. We will not reverse a trial judge’s factual findings on this issue unless they appear clearly erroneous or against the overwhelming weight of the evidence. Walters v. State, 720 So.2d 856, 865(¶ 28) (Miss.1998). According to the record, the trial court’s findings on Murphy’s challenges are not clearly erroneous nor against the weight of the evidence. The trial judge saw the demeanor of the potential jurors and the lawyers bringing the strikes. The judge is in the best position to assess the overall credibility of the statements made in voir dire and by presenters of the peremptory strikes. The record indicates that the presenter of the peremptory strike initially stated that he struck a juror “simply because I just had a bad feeling about him.” Later, the presenter said, “His general demeanor, what we thought of him just by looking at him that we felt it would be better if we didn’t have him on the jury. And I think that’s a race neutral reason.” Based upon these *1035 statements made by the presenter when he supported his peremptory strike, the trial judge was not clearly erroneous when he sustained the objection to the peremptory strikes. Therefore, this issue is without merit.
II. WHETHER THE STATE CONDUCTED AN IMPERMISSIBLY SUGGESTIVE IDENTIFICATION PROCEDURE WHICH RESULTED IN AN IRREPARABLE MIS-IDENTIFICATION.
¶ 10. Murphy alleges that the trial court should not have admitted the out-of-court and in-court identifications by the eyewitnesses to the robbery, carjacking, and kidnaping. He believes that law enforcement conducted an impermissibly suggestive identification procedure.
¶ 11. In Ellis v. State, the Mississippi Supreme Court stated the applicable standard of review as follows:
The standard of review for suppression hearing findings in a matter of pretrial identification cases is whether or not substantial credible evidence supports the trial court’s findings that, considering the totality of the circumstances, in-court identification testimony was not impermissibly tainted.
Ellis v. State, 667 So.2d 599, 605 (Miss.1995).
¶ 12. The ultimate question is whether or not, under the totality of the circumstances, even though the confrontation was suggestive, the identification was reliable, despite the suggestiveness. Neil v. Biggers, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). Regarding an improperly suggestive pre-trial identification’s tainting subsequent identification at trial, the Mississippi Supreme Court evaluates the factors enumerated in Biggers to determine whether the in-court identification is “sufficiently reliable to overcome the taint of the prior improperly attained identification.” Gayten v. State, 595 So.2d 409, 418 (Miss.1992). The Biggers factors include:
(1) the opportunity of the witness to view the accused at the time of the crime;
(2) the degree of attention exhibited by the witness;
(3) the accuracy of the witness’ prior description of the criminal;
(4) the level of certainty exhibited by the witness at the confrontation;
(5) the length of time between the crime and the confrontation.
Ellis, 667 So.2d at 605.
¶ 13. “Even though the pre-trial identification is impermissibly suggestive,” an in-court identification should only be excluded if the conduct, considered under the Biggers factors, “gave rise to a very substantial likelihood of irreparable mis-identifieation.” Mason v. State, 736 So.2d 1053, 1056(¶ 9) (Miss.Ct.App.1999); see also York v. State, 413 So.2d 1372, 1384 (Miss.1982).
¶ 14. The theory behind Murphy’s argument is mind-boggling. Not only did Murphy give a statement that he was in the store, took the money, and took the car, but there was also a videotape that showed Murphy in the store. At trial, Murphy never claimed that he was misidentified. Nor did he argue that someone else committed the crimes. Murphy merely argues that he did not commit all of the elements of robbery, carjacking, and kid-naping.
¶ 15. The facts contained in the record clearly support a finding that the in-court identification was not impermissibly tainted by a pre-trial identification procedure. There was substantial evidence that Murphy was the person who went into the *1036 store, took the money from the clerk, then approached two people in vehicles, and drove away in one of the cars while a person was still inside. The evidence contained in the record included Murphy’s statement to the police, a videotape which recorded the robbery, and the testimony of the witnesses to the crime. Therefore, in the absence of a substantial likelihood of irreparable misidentification, there is no merit to this issue.
III. WHETHER THE STATE FAILED TO PROVE BEYOND A REASONABLE DOUBT THAT MURPHY HAD THE CRIMINAL INTENT TO KIDNAP CHRYSTAL STEVENS.
¶ 16. Murphy contends that the State failed to prove that he intended to kidnap Chrystal Stevens. He claims that he intended to steal the car, and in fact told Stevens to get out. Because of the failure of the door to open, Murphy drove away with her still inside the car. Murphy blames the car.
¶ 17. The Mississippi Supreme Court stated that “kidnaping is not a specific intent crime.” Milano v. State, 790 So.2d 179, 187(¶ 32) (Miss.2001). “Therefore, it is sufficient that the surrounding circumstances resulted in a way to effectively become kidnaping as opposed to the actual intent to kidnap.” Id. When Murphy decided to drive away with Chrystal Stevens in the car, he knew he was taking her against her will. There is not an absence of criminal intent to kidnap merely because Murphy would not have driven off with Stevens if she could have opened the door. He knew he was taking her away against her will when he drove the car away. Murphy had the criminal intent required to commit the crime of kidnaping; therefore, this issue is without merit.
IV. WHETHER THE TRIAL JUDGE ERRED WHEN HE ADMITTED A STATEMENT MADE BY MURPHY.
¶ 18. After the officers apprehended Murphy, he made a few comments in response to a statement made by one officer which was directed at another officer. Officer Werby stated, “Well, he won’t be doing that again,” which Murphy responded to by saying, “You wanna bet. As soon as I get out I’m going to do it again. Y’all can’t stop me.” Murphy claims that his comments were not relevant, and that the prejudice far outweighed any probative value. He also contends that the comments were made without a valid waiver of Murphy’s Miranda rights. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
¶ 19. The Mississippi Supreme Court has held that:
[A] confession or statement relating to culpability may be admitted into evidence if it is given freely and voluntarily, and without the influence of promises or threats. Pinkney v. State, 538 So.2d 829, 342 (Miss.1988) ... A volunteered statement, voiced without prompting or interrogation, is admissible in evidence if made prior to the warning and of course if it were voluntarily and spontaneously made subsequent to [the Miranda warning], it would remain admissible in evidence. Burge v. State, 282 So.2d 223, 226 (Miss.1973). Furthermore, this Court has said an officer is not required to turn a “deaf ear” to such statements. Burge, 282 So.2d at 226. This Court will not reverse a trial court’s finding regarding the admission of a [culpable statement] unless it is manifestly wrong. Lockett v. State, 517 So.2d 1317, 1328 (Miss.1987).
Posey v. State, 822 So.2d 315, 319(¶ 17) (Miss.Ct.App.2002) (citing Ricks v. State, *1037 611 So.2d 212, 214 (Miss.1992)) (emphasis added).
¶20. There is ample evidence in the record that supports the trial judge’s finding that the statement was voluntarily and spontaneously given without coercion or interrogation from the investigators. The statement was spontaneous and not prompted within the meaning of Miranda; therefore, suppression of the voluntary statement was not required. Thus, this issue has no merit.
V. DID THE STATE FAIL TO PROVE BEYOND A REASONABLE DOUBT THAT THE DEFENDANT PUT NI-COLETTE STUBBS IN FEAR OF IMMEDIATE INJURY TO HER PERSON?
¶ 21. Murphy claims that the State is required to prove each element of the crime, but failed to do so in this case. He states that the State failed to prove that he put Nicolette Stubbs in “fear of immediate injury to her person.”
¶ 22. According to Crocker v. State, 272 So.2d 664, 665 (Miss.1973), “[i]t is well settled that the three essential elements of robbery are as follows: (1) felonious intent, (2) force or putting in fear as a means of effectuating the intent, and (3) by that means taking and carrying away the property of another from his person or in his presence.” In dealing with the second element, “if putting in fear is relied upon, it must be the fear under duress of which the owner parts with possession.” Id. It is this second element that Murphy argues that the State failed to prove.
¶ 23. While we recognize that fear after a robbery will not suffice to support that it was the cause of the robbery, Clayton v. State, 759 So.2d 1169, 1172(¶ 8) (Miss.1999), we do not find that to be the case in the case sub judice, as Murphy asserts. After a thorough review of the record, we find that it clearly shows that the State properly established, through Stubbs’ testimony, that she was in fear when she was robbed. Accepting as true all of the evidence that is favorable to the State, including all reasonable inferences that may be drawn therefrom, Noe v. State, 616 So.2d 298, 302 (Miss.1993), we find that this testimony supports the reasonable inference that Stubbs was robbed because she was in fear and that the requisite element for robbery was established.
VI. DID THE STATE FAIL TO PROVE BEYOND A REASONABLE DOUBT, THAT THE DEFENDANT TOOK FROM CRYSTAL DAWN STEVEN’S IMMEDIATE ACTUAL POSSESSION, A MOTOR VEHICLE TO WIT: ONE (1) CHEVROLET [sic] CAMARO?
¶ 24. Murphy alleges that the State failed to prove that he “took from Crystal Dawn Stevens’s immediate actual possession, a motor vehicle to wit one (1) Chevrolet [sic] Camaro.” Murphy also claims that the fact remains that Crystal had no immediate actual possession of this vehicle.
¶ 25. While Mississippi has no case law on point, there are several other jurisdictions which have defined the meaning of “immediate actual possession.” For example, the court of appeals in the District of Columbia stated that “a thing is within one’s immediate actual possession so long as it is within such range that he could, if not deterred by violence or fear, retain actual physical control over it.” Winstead v. United States, 809 A.2d 607, 610 (D.C.2002) (citing Rouse v. United States, 402 A.2d 1218, 1220 (D.C.1979)). The court held in agreement with the District of Columbia Circuit that immediate actual possession “is retained if the car is within *1038 such range that the victim could, if not deterred by violence or fear, retain actual physical control over it.” Id. (citing United States v. Gilliam, 334 U.S.App. D.C. 391, 402-03, 167 F.3d 628, 639-40 (1999) (affirming convictions of earjackers who confronted their victim and took his car after he stepped out of the vehicle to unlock a parking lot gate)).
¶26. Also, the Virginia Court of Appeals stated that “possession of a vehicle may be actual or constructive.” Brown v. Commonwealth, 37 Va.App. 507, 520-21, 559 S.E.2d 415, 422 (2002). “Constructive possession occurs where an individual has the means of exercising dominion or control over the vehicle.” Id. at 521, 559 S.E.2d 415. See Bell v. Commonwealth, 21 Va.App. 693, 698-99, 467 S.E.2d 289, 292 (Va.Ct.App.1996).
¶ 27. According to Black’s Law Dictionary, actual possession is the “physical occupancy or control over property.” Black’s Law Dictionary 1183 (7th ed.1999). Applying these principles, the evidence established that Crystal had actual possession of Veronica Early’s car. She was sitting in the passenger seat with the keys in the ignition. Crystal could easily have swung her legs over and driven the car away. At the time of Murphy’s approach, she quite literally had direct physical control of the car. Clearly, Crystal occupied the vehicle at the time Murphy seized it. She was in possession of the vehicle. She also had control of the running vehicle at the time it was seized.
¶ 28. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT OF CONVICTION ON COUNT I OF ROBBERY AND SENTENCE OF FIFTEEN YEARS; COUNT II OF CARJACKING AND SENTENCE OF FIFTEEN YEARS; COUNT III OF ATTEMPTED CARJACKING AND SENTENCE OF FIFTEEN YEARS; AND COUNT IV OF KIDNAPING AND SENTENCE OF THIRTY YEARS AS AN HABITUAL OFFENDER ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. SENTENCES FOR COUNTS I, II, & III ARE TO RUN CONSECUTIVELY WITH EACH OTHER AND COUNT IV IS TO RUN CONCURRENTLY WITH COUNTS I, II, & III. ALL COSTS OF THIS APPEAL ARE TAXED TO HARRISON COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.